## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANDREW S. KONDRATICK, Sr. and MELISSA A. KONDRATICK, H/W, individually and on behalf of OTHERS SIMILARLY SITUATED, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No. 04-4895 |
| BENEFICIAL CONSUMER DISCOUNT COMPANY, d/b/a BENEFICIAL MORTGAGE COMPANY OF PENNSYLVANIA, et al., | : : : : | |
| Defendants. | : : | |

**ROBERT F. KELLY, Sr. J.**                                                  **SEPTEMBER 21, 2005**

   Presently before this Court is the Motion for Summary Judgment by Defendants

Beneficial Consumer Discount Company, d/b/a/ Beneficial Mortgage Company of Pennsylvania

("Beneficial") and Household Finance Corporation, n/k/a HSBC Finance Corporation

(collectively, "Beneficial Defendants").  Also, before this Court is the Motion for Summary

Judgment by Defendants Chromulak & Associates, LLC, Cathy Ann Chromulak, Heather Troxel,

Susuan Schultz, Scott Crawford and Michelle Smith (collectively, "Attorney Defendants" or

"Counsel for Beneficial").  For the reasons that follow, the Motions for Summary Judgment will

be granted in part and denied in part.

## I.  <u>BACKGROUND</u>

   Plaintiffs Andrew S. Kondratick, Sr. and Melissa A. Kondratick (collectively, "the

Kondraticks"), obtained a home equity line of credit from Beneficial in the amount of $25,000.00

(the "Line of Credit").  The Kondraticks signed a Home Equity Credit Line Revolving Loan

Agreement (the "Note") evidencing the Line of Credit.  The Line of Credit was secured by a mortgage (the "Mortgage") on a certain real property located at 43 East Main Street, Lansdale, Pennsylvania (the "Property").  The Mortgage was signed by Andrew Kondratick because he is the owner of the home having obtained title to the Property from his father.  The Mortgage securing the Line of Credit was a second mortgage on the Property.  Option One Mortgage Company ("Option One") held a first mortgage lien on the Property as security for a loan it made to the Kondraticks prior to June 27, 2001.

The Kondraticks withdrew the full principal amount ($25,000.00) provided for under the Line of Credit and used the funds to payoff a truck loan and help pay various bills. Initially, the Kondraticks were timely with their monthly payments, but by August 31, 2002, they had fallen behind in their monthly payment obligations and, by October 17, 2002, they fell behind by four payments.

On August 31, 2002, Beneficial sent a letter to the Kondraticks advising them of their delinquency and requesting that they contact Beneficial if payment could not be made. Even though the Kondraticks were not sending payments, Beneficial continued to send them monthly mortgage statements.  The October 17, 2002 monthly mortgage statement advised the Kondraticks that their Line of Credit had been suspended due to their failure to make two or more payments when due.

On October 24, 2002, Beneficial sent another letter to the Kondraticks advising them that their account was seriously past due and alerting them that they had not responded to Beneficial's recent request for payment.  This letter also stated that Beneficial intended to take legal action to recover the balance due, unless the past due amount was received within ten days

2

of the date of the letter.  After this correspondence, Beneficial referred the Kondratick file to

Chromulak & Associates, LLC (successor in interest to Mollica & Murray) to collect the amount

claimed to be due and owing by the Kondraticks to Beneficial.[1]  At this point in time, the Line of

Credit represented by the Note and Mortgage was cancelled.

On November 12, 2002, Mollica & Murray (predecessor in interest to Chromulak

& Associates) sent a "debt validation" letter to the Kondraticks advising them that "[l]egal

proceedings may be filed against you thirty days from the date of this notice if this matter is not

resolved during this time."  (Beneficial Defs.' Mot. Summ. J., Ex. G).  This letter included a

"Notice to Consumer Debtor" in accordance with the Fair Debt Collection Practices Act, 15

U.S.C. § 1692g, which stated the following:

### NOTICE TO CONSUMER DEBTOR

TO:     Andrew S. Kondratick, Sr.[2]
        43 Main Street
        Lansdale, PA 19446

IN ACCORDANCE WITH THE FAIR DEBT COLLECTIONS PRACTICES
ACT, 15 U.S.C.S. SECTION 1692g YOU ARE HEREBY NOTIFIED AS
FOLLOWS:

(1) AMOUNT OF DEBT:     $27,864.78

(2) NAME OF CREDITOR:  Beneficial Consumer Discount Company d/b/a/
                        Beneficial Mortgage Company of Pennsylvania

(3) UNLESS YOU, WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS
NOTICE, DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION

---

[1]  Mollica & Murray was dismissed from this action by a Stipulation of Voluntary
Dismissal.  (Doc. No. 32).

[2]  There is an identical Notice which is addressed to Melissa A. Kondratick.  (Pls' Resp.
Beneficial Defs.' Mot. Summ. J., Ex. I).

THEREOF, THE DEBT WILL BE ASSUMED TO BE VALID BY THE DEBT
COLLECTOR ATTORNEY.

(4) IN THE EVENT THAT YOU NOTIFY THE DEBT COLLECTOR
ATTORNEY IN WRITING WITHIN THE THIRTY (30) DAY PERIOD THAT
THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, THE DEBT
COLLECTOR ATTORNEY WILL OBTAIN AND MAIL TO YOU A
VERIFICATION OF THE DEBT OR A COPY OF THE JUDGMENT AGAINST
YOU.

(5) UPON YOUR WRITTEN REQUEST WITHIN THE THIRTY (30) DAY
PERIOD, THE DEBT COLLECTOR ATTORNEY WILL PROVIDE YOU
WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF
DIFFERENT FROM THE CURRENT CREDITOR.

DATED: November 12, 2002

(Id.).  The Kondraticks did not contact Beneficial's counsel in response to the November 12,

2002 letter.

On December 18, 2002, Beneficial's counsel, Chromulak & Associates, initiated a

lawsuit in the Court of Common Pleas of Montgomery County, Pennsylvania, seeking money

damages for the Kondratick's default ("State Action").[3]  In September 2002, the Kondraticks

contacted the Pennsylvania Housing Finance Agency ("PHFA") and applied for a loan under the

Homeowner's Emergency Mortgage Assistance Program ("HEMAP") regarding both the Option

One first mortgage and their Line of Credit with Beneficial.  In November 2002, PHFA approved

the HEMAP loan for the Kondraticks.  On January 10, 2003, a Beneficial representative signed a

Reinstatement Agreement with PHFA.  The Reinstatement Agreement explained that Andrew

Kondratick had been approved for a mortgage assistance loan, and stated that the "loan will

---

[3]At the same time in which the Kondraticks began missing their monthly payments with
Beneficial, they also fell behind on their monthly mortgage payments with Option One, the first
mortgagee.  Option One initiated foreclosure proceedings against the Kondraticks.

4

reinstate the mortgage to a current status, including reasonable attorneys fees and costs."[4]

(Beneficial Defs.' Mot. Summ. J., Ex. I).  The Reinstatement Agreement further provided that:

> A.  Upon payment of the sum of money [the delinquency amount] set forth above, you agree to satisfy all delinquent principal, interest, late charges, real estate taxes, escrow AND total escrow shortage, legal fees and costs owed by the Borrower.  You will reinstate the Borrower's account to a current status.
>
> B.  Upon payment of such sums, all pending legal action arising out of the delinquency of the Borrower will be discontinued.

(Id.).

While the Reinstatement Agreement is dated January 10, 2003, the PHFA did not make payment on behalf of the Kondraticks to Beneficial until April 8, 2003.  The payment by PHFA apparently brought the loan current as of April 8, 2003.[5]  On March 17, 2003, prior to payment by PHFA and subsequent to the signing of the Reinstatement Agreement, Counsel for Beneficial filed a Praecipe for Judgment in the State Action.  On that same day, the Court of Common Pleas of Montgomery County entered a default judgment in the amount of $27,715.40 in favor of Beneficial.  On May 29, 2003, after receiving the payment, Counsel for Beneficial sent the PHFA a letter stating, in part, that "[a]s long as the monthly payments are made,

---

[4] The Reinstatement Agreement specifically named Andrew S. Kondratick, Sr. as the homeowner, but included the names of both Andrew S. Kondratick, Sr. and Melissa Kondratick as the mortgagors.  (Beneficial Defs.' Mot. Summ. J., Ex. I).

[5] The Kondraticks assert that the payment brought the loan current as of April 8, 2003.  However, the Attorney Defendants state that "[e]ven following the curing of the delinquency by virtue of payment from the Reinstatement Agreement in April of 2003, Plaintiffs were not current on their payments to Beneficial.  The Reinstatement Agreement paid delinquencies owed by Plaintiffs up to the point of their application for assistance, but the delinquency was never remedied and remain[s] delinquent."  (Chromulak Defs.' Mem. Law Support Mot. Summ. J. at 15 n.8).

Beneficial will take no further collection action against Mr. and Mrs. Kondratick." (Beneficial Defs.' Mot. Summ. J., Ex. L).

After the payment in April 2003, the Kondraticks became delinquent for a second time in 2004.  On July 9, 2004, as a result of the second delinquency, Counsel for Beneficial filed and served a Writ of Execution on the default judgment with the Kondratick's credit union and received a payment of $526.00.  The Writ of Attachment was discontinued by Beneficial on August 9, 2004.

Following the execution of the Writ and the garnishment of funds from the Kondraticks' credit union account, Counsel for Beneficial received a letter dated July 21, 2004 from PHFA.  In the letter, PHFA argued that the Reinstatement Agreement required Beneficial to vacate the March 17, 2003 default judgment when PHFA made payment to Beneficial on April 8, 2003.  PHFA argued that the Reinstatement Agreement "clearly states that upon payment of the arrearages by PHFA to Beneficial '**all pending legal actions arising out of the delinquency of the Borrower will be discontinued**.'"  (Pl.'s Resp. Beneficial's Mot. Summ. J., Ex. O) (emphasis in original).  PHFA further asserted:

> [i]t is our position that once we bought the debt current Beneficial should have stricken the judgment filed to No. 02-26989.  If that had occurred your office would not have been able to execute on the judgment, but would have had to start over with a new action. That is precisely the reason that the provision is in the Reinstatement Agreement.

(Id.).  In light of the aforementioned, PHFA requested that Beneficial have the judgment stricken.  (Id.).

By letter dated August 2, 2004, Counsel for Beneficial responded to PHFA's letter by stating:

6

> because judgment was entered against the Kondraticks prior to the
> execution of the reinstatement agreement, Beneficial was under no
> obligation to satisfy or vacate the same.  All that was required was
> to cease any collection activity.  By my letter dated May 29, 2003 .
> . . , Beneficial expressed its agreement to not take any further legal
> action against the Kondraticks provided they maintain regular
> payments on this account.  Beneficial never agreed to vacate or
> satisfy its judgment.

(Id., Ex. P).  Counsel for Beneficial went on to state that, after the Kondraticks' second

delinquency, "Beneficial decided to have a Writ of Execution issued against them in this matter.

Further, because of this delinquency, Beneficial intends to keep its judgment against the

Kondraticks and continue its collection actions in this matter."  (Id.).  The Kondraticks filed their

Class Action Complaint in this action on October 19, 2004.[6]

## II.  STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary

judgment is proper "if there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Essentially, the inquiry is

"whether the evidence presents a sufficient disagreement to require submission to the jury or

whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing

---

[6]  The Kondraticks filed their First Amended Class Action Complaint on January 14,
2005.  (Doc. No. 15).  Class discovery in this action has been deferred.  By Order dated April 11,
2005, I ordered that discovery would proceed only as to the individual claims of the Kondraticks.
(Doc. No. 31).  If any individual claims remain after dispositive motion practice, I advised that a
conference call would be scheduled.  (Id.).  Thus, it is noted that the instant Motions for
Summary Judgment are solely regarding the Kondraticks and their individual claims.  On July
21, 2005, the Kondraticks filed a Motion for Leave to File Second Amended Class Action
Complaint.  (Doc. No. 37).  This Motion is pending and will be decided after the instant Motions
have been determined.

the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)(citing Celotex, 477 U.S. at 325 (1986)). Further, the non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim. Celotex, 477 U.S. at 322-23. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

## III. DISCUSSION

In the three-count Complaint before the Court, the Kondraticks assert their action based upon the following: Count I - Fair Credit Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); Count II - Breach of Contract; and Count III - Unfair Trade Practices.[7]  I will

---

[7]  This Court has jurisdiction over the federal claim pursuant 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant 28 U.S.C. § 1367.  Regarding the state law claims, "[d]istrict court rulings on Pennsylvania law are not authoritative and must yield to rulings of the state Supreme Court or, if none exist, consider decisions of the state's intermediate appellate courts in predicting how the state's highest court

individually address each claim.[8]

## A. Count I - FDCPA Claim Against the Attorney Defendants

"The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." Piper v. Portnoff Law Assocs, Ltd., 396 F.3d 227, 232 (3d Cir. 2005)(citation omitted). "The threshold requirement of the FDCPA is that the prohibited practices are used in an attempt to collect a debt." Id. (citations and internal quotation marks omitted). "Debt" is defined by the FDCPA "as 'any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.'" Id. (quoting 15 U.S.C. § 1692a(5)). According to the FDCPA, "'[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt.'" Id. (quoting 15 U.S.C. § 1692a(3)).

---

would rule." Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 400 (3d Cir. 2004)(citing Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996))("In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us . . . . In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule.").

[8] As an initial matter, the Defendants argue that Melissa Kondratick does not have standing to assert breach of contract and unfair trade practices claims premised on an alleged breach of the Mortgage and Reinstatement Agreement because she never signed the Mortgage and is not identified as a beneficiary in the Reinstatement Agreement. I will not address the standing issue as it pertains to the Breach of Mortgage claim because I find that the claim does not survive summary judgment. Regarding the claims pertaining to the Reinstatement Agreement, which survive summary judgment, I find that Melissa Kondratick satisfies the requirements for third party beneficiary status and, therefore, has standing as a third party beneficiary to the Reinstatement Agreement. See Scarpitti v. Weborg, 609 A.2d 147, 150-51 (Pa. 1992)(Pennsylvania Supreme Court decision setting forth the current standard for determining whether someone is a third party beneficiary to a contract).

Under the statute, "[a] 'debt collector' . . . is 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" Id. (quoting 15 U.S.C. § 1692a(6)). "Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of that Act." Id. (citation omitted).

The Kondraticks' FDCPA claim alleges that the Attorney Defendants utilized prohibited practices in their collection activities on Beneficial's behalf.  There are two aspects to the Kondraticks' claim.  First, the Konradticks assert that the Attorney Defendants violated the FDCPA by filing a civil action on the Note even though the Kondraticks were not provided with the requisite statutory notices required by Pennsylvania pre-foreclosure statutes, 41 P.S. § 403 (hereinafter referred to as "Act 6") and 35 P.S. § 1680.401c (hereinafter referred to as "Act 91"). The second premise is based upon Beneficial's  alleged failure to conform to their obligations under the Reimbursement Agreement.  The Kondraticks argue that the Attorney Defendants' actions to further seek debt collection when the Reimbursement Agreement was breached is in violation of the FDCPA.

### 1.  Act 6 and Act 91 Claim

"Act 6 provides that a mortgagee must give thirty days notice before accelerating or commencing foreclosure; 41 Pa.S.A. § 403."[9] Ayers v. Phila. Hous. Auth., 908 F.2d 1184,

---

[9]  Act 6, the Loan Interest and Protection Law, states:

[b]efore any residential mortgage lender may accelerate the

1187 (3d Cir. 1990).  "The notice must inform the debtor of its right to cure the default at any time up to one hour prior to the sale of the residence and that this right may be exercised as many as three times a year."  Id.  "Curing such a default restores the residential debtor to the same position as if the default has not occurred."  Id. (citation omitted).  "The essential purpose of Act 6 notice is to give the borrower the opportunity to cure any defaults that may have occurred in the loan agreement and to take advantage of various consumer protection devices extended by the Act before the home is seized."  Id. (footnote omitted)

---

> maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

41 P.S. § 403(a).  Section 403 further provides that the notice of intention by the mortgagee must consist of the following:

> (b) Notice . . . shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the residence which is the subject of the residential mortgage.
>
> (c) The written notice shall clearly and conspicuously state:
> (1) The particular obligation or real estate security interest;
> (2) The nature of the default claimed;
> (3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money if any, must be tendered to cure the default;
> (4) The time within which the debtor must cure the default;
> (5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and
> (6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

41 P.S. § 403(b),(c).

"Pennsylvania Act 91 notice is, on the other hand, designed to give a homeowner the chance to apply for a state loan to help pay off the mortgage in situations where the homeowner cannot meet his mortgage payments because of unemployment, before foreclosure occurs."[10] Id. (footnote omitted).  "Act 91 complements the procedural requirements of Act 6 by providing access to sources of funding for a debtor in order to prevent default."  Id.  Act 91 "includes provisions for a debtor to obtain a loan from the state of Pennsylvania in order to prevent default; 35 Pa.S.A. § 1680.401c."  Id.

Pursuant to Act 6 and Act 91, the Kondraticks argue that, before any type of legal action was taken concerning their default, the statutory, pre-litigation, thirty day notices of intent to accelerate should have been provided.  The Kondraticks "do not contend that the Attorney Defendants should have sent the Notices; that is normally the task of the Lender."  (Pls.' Resp. Chromulak Defs.' Mot. Summ. J. at 24).  According to the Kondraticks, "Attorney Defendants, with the knowledge that Notices should have been sent . . . should not have attempted to collect the debt that was barred by law for failure to comply with Acts 6 and 91 . . . ."  Id.

The Attorney Defendants preliminarily argue that the Kondraticks' FDCPA claim based upon Act 6 and Act 91 should be dismissed because it is time-barred.  I agree.  According to the FDCPA, "[a]n action to enforce any liability created by this title [15 U.S.C.S. 1692 et seq.]

---

[10]  Act 91, the Homeowners Emergency Assistance Act, provides:

> [b]efore any mortgagee may accelerate the maturity of any mortgage obligation covered under this article, commence any legal action including mortgage foreclosure to recover under such obligation . . . such mortgagee shall give the mortgagor notice as described in section 403-C.

35 P.S. § 1680.402c.

may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, *within one year from the date on which the violation occurs*." 15 U.S.C.S. § 1692k-(d)(emphasis added). Thus, "[a]ctions under the FDCPA must be brought within one year of the alleged violation." Oldroyd v. Assocs. Consumer Disc. Co., 863 F. Supp. 237, 241 (E.D. Pa. 1994)(citing 15 U.S.C. § 1692k-(d)); see also Agosta v. Inovision, Inc., No. 02-806, 2003 WL 22999213, at *6 (E.D. Pa. Dec. 16, 2003)("The statute of limitations under the FDCPA begins to run one year from the date of the violation."). It is important to note that "[t]he limitations period runs from the date of the alleged violation and not the date on which plaintiff became aware of it." Agosta, 2003 WL 22999213, at *6 (citations omitted). "'The one year limitation period in the FDCPA, however, is jurisdictional and not subject to waiver or tolling.'" Id. (quoting Zhang v. Haven-Scott Assocs., 1996 U.S. Dist. LEXIS 8738 (E.D. Pa. 1996)).

The Attorney Defendants filed the civil action based on the Note on December 18, 2002, in the Court of Common Pleas in Montgomery County. Thus, the alleged FDCPA violation regarding the Act 6 and Act 91 Notices would have occurred, at the latest, on or before December 18, 2002 (prior to any type of legal action that was taken concerning the Kondraticks' default). Since actions under the FDCPA must be brought within one year of the alleged violation, the Kondraticks should have brought their claim on or before December 18, 2003. The Kondraticks filed the instant action, including their FDCPA claim, on October 19, 2004. As a result, pursuant to 15 U.S.C.S. § 1692k-(d), the Kondraticks' FDCPA claim based upon Act 6 and Act 91 is time barred. Summary Judgment is granted in favor of the Attorney Defendants on this claim.

**2.  The Reinstatement Agreement Claim**

The Kondraticks assert that Beneficial breached the Reinstatement Agreement it entered into with PHFA.  The Kondraticks' claim is premised upon the following language contained within the Reinstatement Agreement:

> A.  Upon payment of the sum of money [the delinquency amount] set forth above, you agree to satisfy all delinquent principal, interest, late charges, real estate taxes, escrow AND total escrow shortage, legal fees and costs owed by the Borrower.  You will reinstate the Borrower's account to a current status.
>
> B.  Upon payment of such sums, all pending legal action arising out of the delinquency of the Borrower will be discontinued.

(Beneficial's Defs.' Mot. Summ. J., Ex. I).  Specifically, the Kondraticks argue that Beneficial did not honor the terms and conditions of the Reinstatement Agreement based upon the following:

> [u]pon 'cure', [Beneficial] did not reinstate the loan; it did not 'satisfy' the arrears; it did not bring the loan to current status; it did not discontinue the legal action.  It merely permitted the legal action to remain in *status quo*, and did not reinstate the cancelled line of credit.

(Pls.' Resp. Beneficial Defs.' Mot. Summ. J. at 13).  The FDCPA claim against the Attorney Defendants is premised upon the assertion that they knew that the legal action was to have been discontinued when the Reinstatement Agreement was signed, but they did nothing to discontinue the action and, instead, they perpetuated the legal action by garnishing the Kondraticks' bank account.[11]  (Pls.' Resp. Chromulak Defs.' Mot. Summ. J. at 3).

The Attorney Defendants argue the discontinuance provision of the Reinstatement

---

[11]  The Kondraticks' FDCPA claim based upon the Reinstatement Agreement is timely because it was brought within one year of the alleged violation.  15 U.S.C.S. § 1692k-(d).

Agreement did not require Beneficial to vacate the judgment.  According to the Attorney

Defendants, at the time that the delinquency was cured, there was no pending legal action.  Thus,

while the Attorney Defendants may have agreed to cease collection efforts once the delinquency

was cured, they did not agree to vacate the default judgment because a judgment is not a pending

legal action.  That is, the Attorney Defendants agreed not to take further action as to the

delinquency cured by PHFA's April 2003 payment to Beneficial, but did not agree to abandon

Beneficial's judgment in the event that the Kondraticks became delinquent following the curing

of the delinquency after the payment to Beneficial in April 2003.  After reviewing both parties'

arguments, I find there are genuine issues of material fact which preclude summary judgment.

FED. R. CIV. P. 56(c).

   The Kondraticks' claim rests upon a determination concerning whether there was

a breach of the Reinstatement Agreement.  "A court's purpose in examining a contract is to

interpret the intent of the contracting parties, as objectively manifested by them."  Hullett v.

Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994)(citation omitted).  "The

process of interpreting a contract requires the court to make a preliminary inquiry as to whether

the contract before it is ambiguous."  Id. (citation omitted).   "A contract provision is ambiguous

if it is susceptible of two reasonable alternative interpretations."  Id. (citation omitted).  "Where

the written terms of the contract are not ambiguous and can only be read one way, the court will

interpret the contract as a matter of law."  Id. (citation omitted).  "If the contract is determined to

be ambiguous, then the interpretation of the contract is left to the factfinder, to resolve the

ambiguity in light of extrinsic evidence."  Id. (citations omitted).

   "Pennsylvania courts apply the 'plain meaning rule' of interpretation of contracts

which assumes that the intent of the parties to an instrument is 'embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.'"  Id. (quoting County of Dauphin v. Fid. & Deposit Co., 770 F. Supp. 248, 251 (M.D. Pa.)), aff'd, 937 F.2d 596 (3d Cir. 1991).  "Nevertheless, a determination whether the language of an agreement is unambiguous may not be possible without examining the context in which the agreement arose."  Id. (citation omitted).  "Thus, a court is not always confined to the four corners of the written document in determining whether ambiguity exists."  Id. (citation omitted).  "Rather, the judge must consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning."  Id. (citation and internal quotation marks omitted).

After considering the Reinstatement Agreement and the parties' arguments, I conclude that Reinstatement Agreement is ambiguous.  Specifically, I find that the language contained within the discontinuance provision of the Reinstatement Agreement is ambiguous. The discontinuance provision states that "[u]pon payment of such sums, all pending legal action arising out of the delinquency of the Borrower will be discontinued."  (Beneficial's Defs.' Mot. Summ. J., Ex. I).  Under the facts of this case, the terms "pending legal action" and "discontinue" are susceptible of two reasonable alternative interpretations (especially in light of the default judgment).  Since there are objective indications that the discontinuance provision is ambiguous, I will leave its interpretation to the finders of fact.  Thus, summary judgment is denied regarding the Kondraticks' FDCPA claim based upon the Reinstatement Agreement.  After concluding that the Reinstatement Agreement is ambiguous, I will deny all of the arguments for summary judgment proffered by both the Attorney Defendants and Beneficial Defendants that are premised

16

upon interpretation of the terms of the Reinstatement Agreement.[12]  Consequently, the remainder of this Memorandum Opinion will address the Motions for Summary Judgment as they are premised upon grounds other than the Reinstatement Agreement.

### B.  Count II - Breach of Contract Claims Against Beneficial

Turning to the Kondraticks' Count II based upon the ground that Beneficial breached the Mortgage Contract that was entered as security for the Note, I conclude that Beneficial is entitled to summary judgment.  The Kondraticks assert that Beneficial breached Paragraph 17 of the Mortgage which requires a notice in the format of the notices required under Act 6 and Act 91.  According to the Kondraticks, there is no question that Paragraph 17 specifically precludes acceleration without compliance with the notice provisions set forth therein.  Beneficial argues that summary judgment should be granted regarding the breach of contract claim based upon the Mortgage because the Mortgage has never been implicated, let alone violated, by Beneficial.  In the State Action, Beneficial argues that it sued the Kondraticks based solely upon the Note which provided Beneficial with the authority to terminate the credit line and commence a lawsuit upon default.[13]  Beneficial argues that they have always proceeded

---

[12]  Based upon the Reinstatement Agreement, the Attorney Defendants additionally seek summary judgment regarding Count III (Unfair Trade Practices) and the Beneficial Defendants seek summary judgment on Count II (Breach of Contract) and Count III (Unfair Trade Practices).

[13]  The Note states, in pertinent part, as follows:

> **Default and Cancellation of Agreement**: We have the right to terminate your Credit Line Account and to require you to pay your entire balance plus all other accrued but unpaid charges immediately because of:
> (a) failure to make two or more payments when due under this Agreement.

against the Kondraticks exclusively by action on the Note, never by action on the Mortgage.

### 1. Breach of Mortgage Contract Claim

"Under Pennsylvania law, a creditor whose interest is secured by a mortgage and a note may institute an action in rem to foreclose on the mortgage, or it may institute an in personam action on the note." <u>Meritor Sav. Bank v. Peppertree Assocs., Ltd.</u>, No. 90-2137, 1991 WL 91562, at * 2 (E.D. Pa. May 29, 1991)(citing <u>Sams Corp. v. Arin</u>, 507 A.2d 400, 404 (Pa. Super. 1986)).  "An action on a promissory note and an action in foreclosure are two different actions. . . .  In a promissory note action, an *in personam* judgment is sought.  In a mortgage foreclosure action, however, the action is strictly an *in rem* proceeding." <u>First Wisc. Trust Co. v. Midatlantic Home Mortgage Corp.</u>, 653 A.2d 688, 693 n.4. (Pa. Super. 1995).  Thus, "[a] mortgage and an accompanying note are separate obligations." <u>Courtney v. Ryan Homes</u>, 479 A.2d 938, 942 (Pa. Super. 1985).  "The holder of a bond and mortgage can proceed in rem or in personam to enforce his claim.  He may proceed by an action of mortgage foreclosure or by an action on the bond [or note] which the mortgage secures." <u>Id.</u> (quotation and internal quotation marks omitted).  "As a general rule, a judgment entered by confession on a mortgage or bond, unlike a judgment in mortgage foreclosure, is general and is not restricted to the mortgaged premises." <u>Id.</u>  "It is a judgment against the maker of the note personally." <u>Id.</u> (citation omitted).

Beneficial pursued their State Action against the Kondraticks based upon the Note.  In fact, the Kondraticks concede that the State Action "was based solely on the Note . . . and **not** [the] mortgage [because] [i]t was not a Complaint in Mortgage Foreclosure."  (First Am.

---

(Beneficial Defs.' Mot. Summ. J., Ex. A).

Compl., ¶ 51).  At no time prior to, or after, the State Action did Beneficial rely upon the Mortgage in its dealings with the Kondraticks.  Even after receipt of the default judgment in the State Action, and execution of the Writ, Beneficial exclusively relied upon the Note and pursued payment in personam by garnishment of funds from the Kondraticks' credit union account. Thus, Beneficial chose not to proceed in rem based upon the Mortgage, but instead chose to proceed in personam to enforce their claim by instituting an in personam action on the Note.  As previously explained,  "[a]n action on a promissory note and an action in foreclosure are two different actions."  First Wisc. Trust Co., 653 A.2d at 693 n.4.  Since the Mortgage has not been a basis for any action against the Kondraticks, I conclude that the Breach o f Mortgage claim is without merit.  Accordingly, Beneficial is entitled to summary judgment regarding Count II as it relates to the Kondraticks' Breach of Mortgage Contract claim.[14]

### C.  Count III - Unfair Trade Practices Claims Against All Defendants

The Kondraticks assert that the Defendants engaged in unfair trade practices by intentionally violating the mandatory notice provisions enunciated in Act 6 and Act 91.  The Kondraticks allege that the Defendants, by their deceptive conduct, are in violation or have violated the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 et seq. ("PFCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. ("UTPCPL").  "The Pennsylvania Fair Credit Extension Uniformity Act defines  'unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts.'"  Piper v. Portnoff Law Assocs., 274 F. Supp.2d 681, 685 n.4 (E.D. Pa.

---

[14]  It is noted that the summary judgment regarding the Kondraticks' Breach of the Reinstatement Agreement in Count II is denied due to the existence of outstanding issues of material fact.  See supra Part III.A.2.

19

2003), *aff'd*, 396 F.3d 227 (3d Cir. 2005).  "Engaging in one of these defined practices constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law."[15]  Id.

### 1.  Act 6 and Act 91 Claim

The Kondraticks' claim as it relates to notice pursuant to Act 6 and Act 91, is premised upon the assertion that the notices were to be provided to them giving notice of options and alternatives to a legal action for default, and the availability of possible mortgage assistance. Based upon the Defendants' failure to provide the requisite notices under Act 6 and Act 91, the Kondraticks argue that they have violated the PFCEUA and UTPCPL.  I find that the Kondraticks' claim fails as a matter of law.

The Kondraticks assert that violations of Act 6 and Act 91 constitute *per se* violations of the Pennsylvania's Consumer Protection statutes.  In support of their argument, the Kondraticks rely upon Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 431-32 (E.D. Pa. 2002) and Gabriel v. O'Hara, 534 A.2d 488, 494 n.20 (Pa. Super. 1987).  Examination of Flores and Gabriel show that neither case stands for the proposition that violations under Act 6 and Act 91 constitute *per se* violations of Pennsylvania's Consumer Protection statutes.  In Flores, the Court found that the plaintiff had not stated a claim under Act 6 and, therefore, there was no need to address the plaintiff's primary argument that a violation of Act 6 constitutes a *per se* violation of the UTPCPL.  Flores, 246 F. Supp.2d at 431 (citing Gabriel, 368 Pa. Super. 383, 534 A.2d 494 n.20).  As for Gabriel, a footnote lists cases and statutes in which violations of the statutes have

---

[15]  "The UTPCPL is governed by a six-year statute of limitations."  Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 n.9 (Pa. Super. 1999)(citation omitted).  The Kondraticks' claim was filed within the statute of limitations.

constituted violations of the UTPCPL.  Gabriel, 534 A.2d 494 n.20.  Notably none of the cases

listed address Act 6 or Act 91.  The Kondraticks' reliance upon Flores and Gabriel is misplaced

and, consequently, their argument that violations of Act 6 and Act 91 constitute *per se* violations

of the Pennsylvania's Consumer Protection statutes fails.

Due to the failure of the Kondraticks' *per se* argument, it must be determined

whether the alleged violations of Act 6 and Act 91 constitute a defined act or practice under the

PFCEUA, thereby violating the UTPCPL.  "Even if an entity violated a consumer protection law,

such as the Pennsylvania Debt Collection Regulations,[16] such a violation does not automatically

entitle an individual to bring a private right of action under the UTPCPL."  Williams, 227 F.R.D.

at 369.  A preliminary issue to be decided is whether the individual has satisfied the

circumstances required to seek a private action under the UTPCPL.  Id.  Pursuant to Section 201-

9.2 of the UTPCPL, an aggrieved individual may seek a private remedy under the following

circumstances:

> [a]ny person who purchases or leases goods or services primarily
> for personal family or household purposes and thereby suffers *any*
> *ascertainable loss of money or property*, real or personal, *as a*
> *result of* the use or employment by any person of a method, act or
> practice declared unlawful by section 3 of this act, may bring a
> private action *to recover actual damages or one hundred dollars*
> *($100)*, whichever is greater.

Id. at 369-70 (quoting 73 P.S. § 201-9.2)(emphasis supplied).  "Thus, a plaintiff must establish,

*inter alia*, the requisite causation to maintain a viable private action under the UTPCPL."  Id. at

370.

---

[16] "The Pennsylvania Fair Credit Extension Uniformity Act . . . superseded the
Pennsylvania Debt Collection Trade Practices Regulations, effective June 2000."  Williams v.
Empire Funding Corp., 227 F.R.D. 362, 366 n.2 (E.D. Pa. 2005).

"The Courts of this Commonwealth have consistently held that, to establish a private right of action under the UTPCPL, a plaintiff must demonstrate that he/she detrimentally relied upon the deceptive practice of the defendant and that the plaintiff suffered harm as a result of this reliance." Toy v. Metro. Life Ins. Co., 863 A.2d 1, 9 (Pa. Super. 2004), *appeal grant'd*, --- A.2d ---, 2005 WL 1902846 (Pa. Aug. 10, 2005)(citing Weinberg v. Sun Co., 777 A.2d 442, 446 (Pa. 2001)); see also Yocca v. Pitt. Steelers Sports, Inc., 854 A.2d 425, 438-39 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.")(internal citations omitted). Thus, "a plaintiff must demonstrate reliance and resulting injury to establish a private cause of action under any of the UTPCPL's sections." Id. at 10. As a result, "every plaintiff asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct." Id. at 11; see also Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140-41 (3d Cir. 2005)(surveying recent developments in Pennsylvania law concluding that justifiable reliance is necessary to assert a private action under the UTPCPL and stating that the analysis in Toy of Pennsylvania law regarding the issue of justifiable reliance accurately predicts how the Pennsylvania Supreme Court would rule on the issue).

The Kondraticks neither alleged nor demonstrate any detrimental reliance upon the Defendants' alleged deceptive practices as they relate to the notice provisions pursuant to Act 6 and Act 91. In light of the failure of the Kondraticks' *per se* violation argument, it appears that the remainder of the Kondraticks' argument pertaining to the instant claim is premised upon the alleged breach of the Reinstatement Agreement. I have previously concluded that the existence

of genuine issues of material fact precludes summary judgment regarding this claim as it pertains to the Reinstatement Agreement. See supra Part III.A.2. As the instant issue relates to the alleged violations of Act 6 and Act 91, it is dependant upon the Kondraticks' pleading and demonstrating that they suffered an ascertainable loss through their justifiable reliance upon the Defendants' prohibited conduct. Since the Kondraticks have not alleged or established justifiable reliance upon the Defendants' alleged wrongful conduct pertaining to the notice provisions of Act 6 and Act 91, I find that summary judgment is warranted. See also Griffith v. Mellon Bank, 328 F. Supp. 2d 536, 539 n.11 (E.D. Pa. 2004)(finding that plaintiff's failure to plead reliance and damages was fatal to plaintiff bringing a private action under the UTPCPL).

## IV.  CONCLUSION

Due to the existence of genuine issues of material fact, summary judgment is denied pertaining to all of the Kondraticks' claims that rely upon the Reinstatement Agreement. Regarding Count I (FDCPA) as it pertains to violations pursuant to Act 6 and Act 91, summary judgment is granted in favor of the Attorney Defendants because the claim is time barred. Summary judgment is also granted in favor of the Beneficial Defendants regarding Count II (Breach of Contract) as it concerns the Breach of Mortgage claim because the Beneficial Defendants exclusively acted pursuant to the Note and the Mortgage was never implicated or relied upon in any dealings with the Kondraticks. As for Count III (Unfair Trade Practices), summary judgment is granted in favor of the Attorney Defendants and the Beneficial Defendants regarding the claim premised upon Act 6 and Act 91 since the Kondraticks failed to allege or demonstrate the requisite justifiable reliance necessary to maintain a viable private action under the UTPCPL.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ANDREW S. KONDRATICK, Sr. and MELISSA A. KONDRATICK, H/W, individually and on behalf of OTHERS SIMILARLY SITUATED, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 04-4895 |
| | : | |
| BENEFICIAL CONSUMER DISCOUNT COMPANY, d/b/a BENEFICIAL MORTGAGE COMPANY OF PENNSYLVANIA, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 21st day of September, 2005, upon consideration of the Motion for Summary Judgment by Defendants Chromulak & Associates, LLC, Cathy Ann Chromulak, Heather Troxel, Susuan Schultz, Scott Crawford and Michelle Smith ("Attorney Defendants") and the Motion for Summary Judgment by Defendants Beneficial Consumer Discount Company, d/b/a/ Beneficial Mortgage Company of Pennsylvania and Household Finance Corporation, n/k/a HSBC Finance Corporation ("Beneficial Defendants"), and the Responses and Replies thereto, it is hereby **ORDERED** that:

1.      the Motion for Summary Judgment by the Attorney Defendants (Doc. No. 38) regarding Count I (FDCPA) is **GRANTED** as it pertains to violations pursuant to Act 6 and Act 91 and summary judgment is **DENIED** as the claim pertains to the Reinstatement Agreement; and

2.      the Motion for Summary Judgment by the Attorney Defendants (Doc. No. 38) concerning Count III (Unfair Trade Practices) is **GRANTED** regarding the claim premised upon Act 6 and Act 91 and summary judgment is **DENIED** as the claim pertains to the Reinstatement Agreement.

**IT IS FURTHER ORDERED** that:

    1.    the Beneficial Defendants' Motion for Summary Judgment (Doc. No. 39) regarding Count II (Breach of Contract) is **GRANTED** as it pertains to the Breach of Mortgage claim and summary judgment is **DENIED** regarding the Breach of Reinstatement Agreement claim; and

    2.    the Beneficial Defendants' Motion for Summary Judgment (Doc. No. 39) concerning Count III (Unfair Trade Practices) is **GRANTED** regarding the claim premised upon Act 6 and Act 91 and summary judgment is **DENIED** as the claim pertains to the Reinstatement Agreement.

The parties shall advise the Court as to the need for class action discovery concerning the only remaining class action claim, Count II as it pertains to breach of the Reinstatement Agreement, on or before Wednesday, September 28, 2005.

BY THE COURT:

s/ Robert F. Kelly _____

Robert F. Kelly,                Sr. J.

2